IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NEXTWAVE MARINE SYSTEMS, INC.,**
a British Columbia corporation,

    Plaintiff,

  v.

**M/V NELIDA**, her engines, tackle, apparel
and equipment, **CASAMIRO A.
STASCAUSKY** and **GERARD
STASCAUSKY**,

    Defendants.

Case No. 3:19-cv-01354-IM

**OPINION AND ORDER**

Michael E. Haglund, Eric J. Brickenstein, HAGLUND KELLEY LLP, 200 S.W. Market Street, Suite 1777, Portland, Oregon 97201. Attorneys for Plaintiff.

Nicholas A. Kampars, WILDWOOD LAW GROUP LLC, 3519 NE 15th Avenue, #362, Portland, Oregon 97212. Attorney for Defendants.

**IMMERGUT, District Judge.**

    This case involves is a dispute between Plaintiff NextWave Marine Systems, Inc.

("NextWave"), a vessel repair company, and Defendants Gerard Stascausky, the owner of the

M/V Nelida ("the Vessel"), and his father Casamiro ("Art") Stascausky, arising out of an

agreement to repair the Vessel. The matter comes before the Court on Defendants' motion for

summary judgment and Plaintiff's cross-motion for partial summary judgment. ECF 23; ECF 26. This Court held a hearing on the parties' motions on September 18, 2020.

After considering the evidence, pleadings, and arguments of counsel, this Court finds that there are genuine issues of material fact precluding summary judgment on Plaintiff's claims for breach of contract and quantum meruit. This Court further finds there are no genuine issues of material fact related to Plaintiff's conversion claims, and therefore summary judgment in favor of Defendants is proper on that singular claim. Finally, this Court finds there are genuine issues of material fact concerning Defendants' counterclaim for breach of contract, precluding summary judgment in favor of Plaintiff. For the reasons that follow, Defendants' motion for summary judgment is granted in part, and Plaintiff's cross-motion for partial summary judgment is denied.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

NextWave is a vessel repair company headquartered in British Columbia, Canada. ECF 1 ¶ 1; ECF 22 at ¶ 1. The company is co-owned by Ted and Barbara Mark. ECF 22 at ¶ 1. Gerard Stascausky is the owner of the Vessel, but both he and Art Stascausky were parties to the contract at issue *Id.* at ¶¶ 2, 4–6.

In the Spring of 2018, Defendants Gerard Stascausky and Art Stascausky (the "Stascauskys") contacted NextWave to inquire about replacing the Vessel's transmission with a hydrostatic transmission. *Id.* at ¶ 3. Ted and Barbara Mark travelled to Portland, Oregon, around May 21, 2018, to inspect the Vessel and discuss the proposed project with the Stascauskys. *Id.* at ¶ 4. NextWave and the Stascauskys entered into a written "Contract to Perform Vessel Repair Services" in August of 2018 (the "August 2018 Agreement"). *Id.* at ¶ 4–6.

The August 2018 Agreement included a section describing the "[s]cope of contracted work" which lists several types of repair projects, as well as a section entitled "Contract Price and Payment Terms." *Id.* at Ex. A. That section states:

> USD $65,000. To be paid ½ up front (USD $32,500) and the balance paid monthly (USD $5,000 per month). The actual price may vary by plus or minus 10% (USD $6,500), and NextWave Marine Systems Inc. agrees to work in good faith in determining any such adjustments. Monthly payments will be due the first of each month until the contract balance is paid in full. Monthly payments received after the 15th day of the month in which they were due will be considered to be in default and will accrue interest at an annual rate of 24% starting from the first day of the month until paid in full.

*Id.* The document also estimates that the project will take 90 to 100 days to complete. *Id.*

After signing the document, the Stascauskys wired $32,500 to NextWave and sailed the Vessel to the French Creek Marina in British Columbia in late August of 2018, where NextWave would be performing repairs on the Vessel while it was moored. *Id.* at ¶ 7. Thereafter, the Stascauskys made monthly $5,000 payments to NextWave from October 2018 through May 2019. *Id.* at ¶ 8. By May 2019, these monthly payments and the initial deposit totaled $72,500. *Id.*

In April of 2019, the Stascauskys came to French Creek Marina for a water test of the Vessel with NextWave. *Id.* at ¶ 9. During the water test, the parties identified outstanding operational issues with the Vessel that needed to be addressed. *Id.* After the test, NextWave presented the Stascauskys with a bill for time and materials for the project, which the Stascauskys disputed. *Id.* at ¶ 10. Almost a month later, NextWave sent the Stascauskys a revised invoice, which acknowledged receipt of prior payments and sought an additional $82,286.11 in Canadian dollars. ECF at 24 at 51; ECF 22 at ¶ 11. The Stascauskys disputed the invoice, and NextWave informed the Stascauskys that it would continue to support a second water test, but that the Stascauskys could not retrieve the Vessel until the invoice was paid in full. ECF 22 at ¶ 11.

Around May 27, 2019, the Stascauskys travelled to French Creek Marina, boarded the Vessel and sailed it away without notifying NextWave or paying the invoice issued by NextWave. *Id.* at ¶ 12. The Stascauskys immediately identified operational issues while sailing that prevented the Vessel from travelling faster than three knots. *Id.* at ¶ 13. Instead of returning to port, however, they sailed the Vessel to Port Angeles, Washington. *Id.* The Stascauskys later mailed NextWave certain tools they found aboard the Vessel. *Id.* at ¶ 14.

NextWave ("Plaintiff") filed this action against the Vessel, Gerard Stascausky, and Art Stascausky ("Defendants"). ECF 1. Plaintiff brings claims for breach of contract, conversion, and quantum meruit. ECF 11 at ¶¶ 8–20. Plaintiff claims the Stascausky Defendants breached the parties' contract and consequently owe them approximately $68,000. *Id.* at ¶¶ 9–10. Plaintiff alleges, in the alternative, that NextWave performed valuable services for Defendants beyond the scope of the August 2018 Agreement, and it is entitled to recover approximately $68,000 for their services. *Id.* at ¶¶ 17–20. Plaintiff also claims that the Stascausky Defendants intentionally

PAGE 5 – OPINION AND ORDER

converted NextWave's tools left onboard the Vessel when they sailed away from French Creek Marina. *Id.* at ¶¶ 13–14. Defendants assert counterclaims against Plaintiff for breach of contract, alleging Plaintiff failed to complete performance of the repair services for the contract price designated in the August 2018 Agreement. ECF 15 at ¶¶ 39–43. Defendants seek $100,000 in damages. *Id.*

On May 20, 2020, Defendants filed a motion for summary judgement. ECF 23. Plaintiff also filed a motion for partial summary judgment that same day. ECF 26. The Court considers each motion in turn.

## DISCUSSION

### A. Choice of Law

As a threshold matter, this Court must determine the applicable law for this dispute. Both parties advance general maritime law and Oregon law in support of their arguments. *See* ECF 35 at 11; ECF 42 at 2; ECF 26 at 9–13; ECF 32 at 6–7; ECF 43 at 3–5. Because the original complaint was properly in federal court on federal admiralty subject matter jurisdiction, general maritime law applies. *See* U.S. Const. art. III, § 2. "Admiralty jurisdiction brings with it a body of federal jurisprudence, largely uncodified, known as maritime law." *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 625 (1st Cir. 1994). Developed from state and federal sources, "general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River S.S. Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858, 864–65 (1986).

Added to the foregoing are the "familiar precepts that state law may supplement federal maritime law when maritime law is silent or where a local matter is at issue, but state law may not be applied where it would conflict with maritime law." *Floyd v. Lykes Bros. S.S. Co.*, 844

F.2d 1044, 1047 (3d Cir. 1988); *see also Richard v. Anadarko Petroleum Corp.*, 850 F.3d 701,

709 (5th Cir. 2017) (noting state law may be utilized to fill gaps in an incomplete maritime

system); *Aqua-Marine Constructors v. Banks*, 110 F.3d 663, 667–68 (9th Cir. 1997) (holding

disputes over maritime insurance may be governed by state law, as long as the state law does not

clearly conflict with general maritime law). In the instant case, neither of the parties have

asserted, and the Court has failed to discern, any direct conflict between Oregon law and general

maritime law. The Court will therefore reference Oregon law to supplement the established rules

provided by general maritime law.

### B. Defendants' Motion for Summary Judgment

Defendants ask the Court to grant summary judgment on all of Plaintiff's claims, arguing

that: (1) the August 2018 Agreement is an unambiguous fixed-price contract, and Defendants

paid all that was due under it; (2) the parties' antecedent negotiations cannot contradict the

express terms of the August 2018 Agreement; (3) the parties did not agree on modifications to

the fixed-price term of the contract after execution; (4) Plaintiff cannot maintain a claim in

quantum meruit because it is foreclosed by the breach of contract claim; and (5) Plaintiff's claim

for conversion of tools should be dismissed because Plaintiff cannot meet its burden to show that

a single tool remains missing. ECF 23 at 2, 7–14.

In response, Plaintiff argues that material factual disputes preclude summary judgment on

Plaintiff's breach of contract, quantum meruit, and conversion claims. Plaintiff argues that the

August 2018 Agreement is not integrated, and the parties expanded the August 2018

Agreement's scope during performance to include added services. ECF 35 at 11–13. Further,

Plaintiff argues that it is appropriate to bring a claim in quantum meruit in the alternative—if the

trier of fact finds the parties did not modify the August 2018 Agreement, Plaintiff is still entitled

to recover the fair value of its extracontractual services. *Id.* at 15. Finally, Plaintiff argues that a genuine issue of material fact concerning the missing tools precludes summary judgment on its conversion claim. *Id.* at 16–17.

### 1. Plaintiff's Breach of Contract Claim

In essence, Defendants argue Plaintiff's claims for breach of contract must fail because the August 2018 Agreement was a fully integrated, unambiguous contract, and under the maritime law parol evidence rule, the Court cannot look beyond its plain terms in assessing Plaintiff's claims for breach of contract. Defendants' argument misses the mark.

In general, maritime law applies to all maritime contracts. *See Aqua-Marine*, 110 F.3d at 670; *see also Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 212 (1986). Contracts for vessel repairs are maritime contracts. *Umpqua Marine Ways, Inc., v. United States*, 925 F.2d 409, 411 (Fed. Cir. 1991) (citing *Tucker v. Alexandroff*, 183 U.S. 424, 438 (1902)); *see also Golden Pisces, Inc. v. Fred Wahl Marine Const., Inc.*, 495 F.3d 1078, 1080–81 (9th Cir. 2007) (applying federal maritime law to breach of contract claim for ship repair that arose in admiralty). The parol evidence rule as applied to maritime contracts is plainly covered by maritime law. *See Har-Win, Inc. v. Consolidated Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir. 1986); *Battery S.S. Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738–39 (2d Cir. 1975).

The rule is generally stated as follows:

> When two parties have made a contract and have expressed it in a writing to which they have both asserted as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Har-Win,* 794 F.2d at 987 (quoting *Battery S.S. Corp.*, 513 F.2d at 738). Defendants are correct in asserting that in general, courts cannot consider contradictory parol evidence of the parties'

intended maritime contract meaning unless the language of the contract is ambiguous. *See Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332–33 (5th Cir. 1981) ("[A] court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous."). However, this rule only applies if the parties intend the writing to be the final and complete expression of their agreement, i.e. the contract is "integrated." *See Denali Seafoods, Inc. v. W. Pioneer, Inc.*, 492 F. Supp. 580, 582 (W.D. Wash. 1980); *see also Battery S.S. Corp*, 513 F.2d at 739.

Whether a maritime contract is integrated is a question of fact to be decided based on all available evidence. *Battery S.S. Corp,* 513 F.2d at 739–40. On the question of integration, "there is no 'parol evidence' rule to be applied." *Id.* at 740 (quoting 3 *Corbin on Contracts* § 573 (1960)) (internal quotation marks omitted). Although a writing may appear complete on its face, such appearance can evince intent but does not establish as a matter of law that the agreement is integrated. *See id.* Further, a writing containing words which seem clear on their face does not, by itself, establish that it accurately reflects the agreement of the parties. *Id.*

Similarly, the maritime parol evidence rule does not bar proof that a written agreement was later orally altered. The parol evidence rule prevents only evidence of prior or contemporaneous modification of the written contract. It does not preclude evidence of subsequent agreements, written or oral. *See* Arthur L. Corbin, Joseph M. Perillo, John E. Murray, Jr., *Corbin on Contracts* § 13.1 ("The parol evidence rule . . . has no application . . . to subsequent agreements modifying or rescinding the original contract."); *see also Kossick v. United Fruit Co.,* 365 U.S. 731, 734 (1961) (noting oral contracts are regarded as valid by maritime law). Indeed, alteration, modification, or waiver of maritime contract provisions may

be implied from the circumstances surrounding performance of the contract. *Stauffer Chem. Co. v. Brunson*, 380 F.2d 174, 182 (5th Cir. 1967).

### a. Integration

Plaintiff argues that the August 2018 Agreement is not integrated, and therefore the factfinder can consider extrinsic evidence in determining the precise meaning of the Agreement's terms. ECF 35 at 11–12. In support of this argument, Plaintiff points to the events leading up to the signing of the August 2018 Agreement. For example, Plaintiff points to the deposition testimony of Ted Mark, who explains he inspected the Vessel for a mere half hour and did not disassemble any of the Vessel's existing systems before telling the Stascauskys that the transmission refit "could be done." ECF 36 at 60–61. Plaintiff also points to testimony suggesting that the cost provided in the August 2018 Agreement was only an "an absolute rough estimate," and that Ted Mark cautioned that he could not determine the project's full scope and cost before gaining a better understanding of the work needed to be done. *Id.* at 61, 77–78.

Further, Plaintiff introduces evidence of prior written communications between the parties following the inspection of the Vessel in Portland and before the execution of the August 2018 Agreement. In these communications, NextWave appears to advise the Stascausky Defendants that it cannot not determine the actual scope and cost of the project until work was underway. *See id.* at 7–14. For example, in a message sent from Plaintiff to the Stascausky Defendants in June of 2018, Plaintiff explains it cannot provide the Stascauskys with an estimate for work on the auxiliary hydraulic pump, the steering system, and the reconfiguration of electronics until Ted Mark had "the opportunity to make the full assessment." *Id.* at 10. Plaintiff further warns, "I [Ted Mark] do not want to sound like I expect an open cheque [sic] on these items. I believe you understand the unknown that I am facing pertaining to the above items." *Id.*

The "items" Ted Mark is referring to appear to all be plausibly encompassed under the August 2018 Agreement's "[s]cope of contracted work" description. ECF 22 Ex. A.

Perhaps most notably, in response to a proposed "agreement" provided by Gerard Stascausky to Ted Mark via email, Ted Mark writes, "I have not submitted a 'quote' for any items. In our discussion and communications it was estimated to the best of my knowledge with [the] limited information I have at this time." ECF 36 at 13. Plaintiff also points to Gerard Stascausky's own characterization of the August 2018 Agreement as a "general understanding of the agreement and wish list of items to accomplish," ECF 36 at 6, as well as the absence of an integration clause, and the vague and incomplete list of projects under the "[s]cope of contracted work" to  support its argument. ECF 35 at 7.

Defendants respond to these contentions with evidence of the parties' negotiation on the scope of the work and price, pointing to many of the same documents Plaintiff references in its arguments. *See* ECF 42 at 3–4 (citing ECF 36 at 6–14); *see also* ECF 24 at 14–15. Defendants also characterize the negotiations as an arms-length transaction between "a sophisticated business entity" and the Stascauskys. ECF 42 at 3. Finally, Defendants argue that the fact that the agreement was reduced to a type-written contract is evidence of integration. ECF 42 at 3–4. Although these facts may certainly weigh in Defendants' favor, Plaintiff has established a genuine issue of material fact about whether the August 2018 Agreement is integrated. Summary judgment on Plaintiff's breach of contract claim is inappropriate based on the uncertainty of integration alone.

### b.  Subsequent Contract Modifications

Plaintiff also argues that the initial scope of the project was expanded once NextWave began to work on the Vessel. ECF 35 at 8–9. Ted Mark testified that numerous issues were

discovered after the Vessel's arrival at French Creek Marina. ECF 36 at 8. Ted Mark identifies

several additional projects he contends were performed by NextWave in excess of the August

2018 Agreement's scope of work. ECF 37 at ¶ 8. These projects include:

(1) designing and installing a custom auxiliary hydraulic system;

(2) converting "from an electric driven hydraulic system for rudder steering to propulsion

engine driven hydraulic steering system";

(3) designing and implementing an engine RPM controlling system;

(4) installing a new filtration system;

(5) designing and implementing an entirely new instrument panel;

(6) manufacturing and installing new front engine mounts;

(7) the labor required to dispel persistent noxious odors in engine room;

(8) Ted Mark's labor to correct an engine smoke issue;

(9) Barbara Mark's labor related to parts sourcing and customer service in excess of what

is customary and expected; and

(10) the labor associated with custody and caretaking of the Vessel during an

approximately nine-month period.

*Id.* Plaintiff contends these additional requests caused the project to extend far beyond the 90 to

100 day work period initially estimated. ECF 35 at 8. Ted Mark also suggested the Stascauskys

were heavily involved in discussions related to these changes, and he would speak to them

frequently by phone about the work. ECF 36 at 73.

Defendants in reply argue the parties did not modify the contract into a time and

materials arrangement which would have contradicted the August 2018 Agreement's terms. ECF

42 at 5–7. Defendants argue the "excess work" described by Plaintiff was either contemplated in

the original August 2018 Agreement, or paid for separately by the Stascauskys. *Id.* at 6. For example, Ted Mark contends that the Stascauskys never paid for the "[l]abor to dispel persistent noxious odors in [the] engine room" or "Barbara Mark's labor related to parts sourcing and customer service in excess of what is customary and expected," ECF 37 at ¶ 8, but Defendants argue that the August 2018 Agreement price encompassed all labor necessary to implement the items in the scope of work. ECF 42 at 6. Defendants point to a proposal Plaintiff sent following the inspection of the Vessel, describing "the scope of supply materials and *labor*." ECF 36 at 8 (emphasis added). Defendants also point to the express referral to "workmanship" in the August 2018 Agreement, as well as the use of "verbs to describe each category of work" as evidence of its inclusion. ECF 42 at 5–6; ECF 22 Ex A. Defendants further note that the parties did not agree upon an hourly rate for Ted or Barbara Mark. ECF 42 at 6.

Additionally, Defendants argue that the design and implementation of an engine RPM controlling system as well as the design and implementation of an entirely new instrument panel were included within the August 2018 Agreement's scope of work under the category of "Electronics." *See* ECF 22 Ex. A. at ¶ 5; ECF 42 at 6. With regard to the other items of excess work Ted Mark identifies, Defendants summarily contend, those "were also included in the Scope of Work, or where [sic] paid for by the Stascausky Defendants as 'invoiced extras,' as reflected in plaintiff's own billing records." ECF 42 at 7. In support of this argument, Defendants cite only to Plaintiff's billing records, which include reference to payments received from the Stascausky Defendants on "extras," but those "extras" are not clearly defined. *See* ECF 36 at 26. In doing so, Defendants appear to concede at the very least that Plaintiff performed work on the Vessel outside the scope of their written August 2018 Agreement.

Clearly then, Plaintiff has raised a genuine issue of material fact concerning the existence of oral modifications to the Agreement after it was signed in August. Plaintiff's evidence suggests the possibility that the parties intended to modify the scope of the project after the August 2018 Agreement was signed, and that the work NextWave performed on the Vessel went beyond the scope of work described in the written Agreement. Defendants do not foreclose that possibility with their arguments. These disputes are material because their determination would alter the terms of the Stascausky Defendants' liability to Plaintiff. Summary judgment on Plaintiff's breach of contract claim is denied.

### 3. Plaintiff's Quantum Meruit Claim

Defendants next argue summary judgment is warranted for Plaintiff's claim in quantum meruit because that argument is foreclosed by Plaintiff's contention, pled in the alternative, that a contract governs the parties' transactions. ECF 23 at 11–12. Defendants note, correctly, that where a valid contract applies, a party cannot also recover in quantum meruit for matters covered by the contract. *Id.* Nevertheless, Defendants' argument oversimplifies Plaintiff's claim.

As explained by the Oregon Court of Appeals:

> Quantum meruit is a form of restitution where the plaintiff has performed services for defendant and seeks to recover their fair value. The law, in appropriate situations, will imply a quasi-contract. It is not consensual. It is not a contract. It is a remedial device which the law affords to accomplish justice and prevent unjust enrichment. Quantum meruit presupposes that no enforceable contract exists.

*Kashmir Corp v. Patterson*, 602 P.2d 294, 296 (Or. Ct. App. 1979) (citation omitted). Undoubtedly, "there cannot be a valid, legally enforceable contract and an implied contract covering the same conduct." *See Mount Hood Cmty. Coll. ex rel. K & H Drywall, Inc. v. Fed. Ins. Co.,* 111 P.3d 752, 759 (Or. Ct. App. 2005). When quantum meruit and contract claims are

pleaded in the alternative, the quantum meruit claim becomes relevant only if the contract does

not address the services for which recovery in quantum meruit is sought. *L.H. Morris Elec.*, *Inc.*

*v. Hyundai Semiconductor Am., Inc.*, 125 P.3d 1, 8 (Or. Ct. App. 2005). If the parties have a

valid contract, any remedies for breach flow from that contract, and a party cannot recover in

quantum meruit for matters covered by the contract. *Ken Hood Constr. Co. v. Pac. Coast*

*Constr., Inc.*, 126 P.3d 1254, 1256 (Or. Ct. App. 2006).

　　　　Nevertheless, it is both proper and commonplace for a party to plead counts in contract

and in quantum meruit covering the same course of events. "Such alternative pleading may be

beneficial to the pleader . . . where [it] is unsure of whether it can *actually prove the existence of*

*the contract at trial.*" *Kashmir Corp.*, 602 P.2d at 296 (emphasis added). "Indeed, the use of a

quantum meruit claim as an alternative to a breach of contract claim is so common that it is not

only unremarkable but something that is expected." *Mount Hood*, 111 P.3d at 758. Plaintiff is

entitled to plead alternatively on an express contract and in quantum meruit "without having to

elect the theory upon which it would rely." [1] *Id.* at 759.

　　　　Defendants essentially argue that because the parties agree they had a valid contract

governing the repair of the Vessel, all of Plaintiff's claims related to the Vessel's repairs must

necessarily arise from the August 2018 Agreement. ECF 23 at 12; ECF 42 at 8–9. Plaintiff,

however, contends that the terms of the contract changed during the course of performance, with

extra items and change orders to be paid on a time and materials basis. ECF 35 at 15. Plaintiff

also acknowledges, however, the possibility that the factfinder will determine the parties did not

---

[1] Defendants also suggest that once at the summary judgment stage, "a party may no longer rely on the alternative pleading." ECF 42 at 9. Defendants' argument is belied by the mere fact that claims for breach of contract and quantum meruit can be tried together. *See, e.g., Kashmir Corp.*, 602 P.2d at 296 (noting that when claims for breach of contract and quantum meruit are tried together, the contract price is the ceiling on recovery even under the quantum meruit count).

modify the August 2018 Agreement or supplement it with additional terms. In that scenario, Plaintiff is entitled to seek recovery for the fair value of its extracontractual services under a quantum meruit theory. Such alternative pleading is not only unremarkable but also plainly contemplated by the law. Summary judgment on Plaintiff's claims in quantum meruit is denied.

### 4. Plaintiff's Conversion Claim

Defendants seek summary judgment on Plaintiff's conversion claim, arguing Plaintiff cannot establish any genuine issue of material fact because Plaintiff has not demonstrated sufficient evidence to support its claim. ECF 23 at 12–14. General maritime law applies to torts that occur on navigable water and bear a substantial relationship to traditional maritime activity. *See Wallis v. Princess Cruises, Inc.,* 306 F.3d 827, 840 (9th Cir. 2002) The general principles of tort law guide courts in maritime tort cases, *see Christensen v. Georgia-Pacific Corp*., 279 F.3d 807, 816 n.38 (9th Cir. 2002), and the Ninth Circuit has drawn from the Restatement of Torts in developing maritime tort rules, *see McIndoe v. Huntington Ingalls Inc*., 817 F.3d 1170, 1173 (9th Cir. 2016). Oregon has also adopted the Restatement (Second) of Torts definition of conversion. *Mustola v. Toddy*, 456 P.2d 1004, 1007 (Or. 1969). That definition states:

> (1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.
>
> (2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
>
>> (a) the extent and duration of the actor's exercise of dominion or control;
>>
>> (b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
>>
>> (c) the actor's good faith;

> (d) the extent and duration of the resulting interference with the other's right of control;
>
> (e) the harm done to the chattel;
>
> (f) the inconvenience and expense caused to the other.

Restatement (Second) of Torts § 222A (Am. Law Inst. 1965). A finding of conversion leads to a forced sale of the chattel to the tortfeasor. *Fogh v. McRill*, 956 P.2d 236, 241 (Or. Ct. App. 1998). Each element of conversion must be proven by Plaintiff by a preponderance of the evidence. *Mason v. Miller*, 752 P.2d 1280, 1282 (Or. Ct. App. 1988).

Plaintiff's claim for conversion arises from the tools left onboard the Vessel at the time the Stascauskys sailed it from French Creek Marina to Port Angeles. ECF 11 at ¶¶ 13–14. Plaintiff concedes the Stascauskys returned "certain tools that were on the Vessel." ECF 22 at ¶ 14. NextWave seeks $5,000 in damages for this claim. As evidence, however, Plaintiff only offers the testimony of Barbara Mark. Barbara Mark stated that upon receipt of the tools sent by the Stascauskys, "NextWave paid a Canadian customs brokerage fee." ECF 38 at ¶ 2. She did not specify the amount of the fee. Further, Barbara Mark claimed a hoist worth several hundred dollars was taken with the Vessel. ECF 36 at 33–34. However, Barbara Mark also testified that it would be Ted Mark, not her, who would know more about the missing tools. ECF 24 at 38.

In support of summary judgment, Defendants note Ted Mark was unable to identify any particular tool left onboard the Vessel that was not returned to NextWave. ECF 24 at 9. Ted Mark also admitted that no one at NextWave has taken an inventory of tools to identify those missing. *Id.* at 9–10. Ted Mark further conceded that NextWave is "not keeping that close [a] tab on tools." *Id.* at 32–33.

As stated previously, "[w]here the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387. Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586. A "scintilla of evidence," or evidence that is "merely colorable" or "not significantly probative," is not sufficient to present a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. The non-moving party, NextWave, must show evidence from which a jury could reasonably render a verdict in its favor. *See id.* at 252.

Plaintiff has not presented sufficient evidence to support a reasonable juror's verdict in its favor on its conversion claim. Plaintiff points only to the contested testimony of Barbara Mark in support of its claim that certain tools remain missing from NextWave. Barbara Mark, however, also admits in that same testimony that Ted Mark would be a more reliable source for information on the types of tools left aboard the Vessel. Barbara Mark also claims NextWave paid a customs brokerage fee for some of the tools returned but fails to specify the cost of that fee or the duration of time that the tools were missing. Ted Mark cannot identify a single tool that remains missing. *See* ECF 24 at 8. Ted Mark concedes NextWave does not keep an inventory of tools, and no operative list of missing tools or tools left onboard the Vessel has been identified to the Court. *See, e.g.,* ECF 24 at 9–10 ("what we were using or what went on [the Vessel] and came back, we have not created any record of"); ECF 36 at 80 ( "I don't know how much [sic] tools we have on board when the boat was taken.").

The "scintilla of evidence" presented to the Court is not enough to create genuine issue of material fact concerning Plaintiff's conversion claim. Summary judgment, therefore, is granted.

## C.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff filed a motion for Partial Summary Judgment against Defendants' counterclaim for breach of contract. ECF 26. Plaintiff argues the Stascauskys' removal of the Vessel from French Creek Marina obstructed Plaintiff's ability to complete repairs, thwarting full performance of the contract.[2] *Id.* at 9. In response, Defendants argue that Plaintiff had completed the work as specified in the contract, and therefore, the retrieval of the Vessel could not have interfered with Plaintiff's performance. ECF 32 at 6–8. Defendants also object to the admissibility of Plaintiff's expert witness testimony. *Id.* at 8–11; *see also* ECF 42 at 8 n.2.

Plaintiff argues that the a second "water test" was a prerequisite to the project's completion, and by taking the Vessel before the water test could happen, the Stascauskys deliberately interfered with Plaintiff's performance. ECF 26 at 9–10. In support of this argument, Plaintiff offers deposition testimony which purports to show the parties had a mutual understanding that the second water test would occur before the project was completed. Indeed, both Gerard and Art Stascausky readily state they expected NextWave to conduct a second water test. *See* ECF 27 at 8 ("we were going to try to schedule another sea trial to resolve the

---

[2] Plaintiff also argues that the Stascauskys' counterclaim should be dismissed to the extent it seeks noneconomic or other unrecoverable damages. ECF 26 at 12–13. Plaintiff bases this assertion on the deposition testimony of Art Stascausky, who appeared to testify that $60,000 of Defendants' counterclaim for $100,000 in damages is attributable to his "emotional distress." *See* ECF 27 at 40–41. In response, Defendants represent to the Court that they are not seeking non-economic damages on their claim for breach of contract. *See* ECF 32 at 11. Indeed, this Court cannot discern any pleadings upon which Plaintiff relies beyond the uncorroborated statements of one witness for this theory. The Court accepts Defendants' representations that they are not seeking non-economic damages on a claim for breach of contract, and therefore a ruling from the Court is unnecessary.

outstanding mechanical issues"), 9 ("We were definitely working on trying to schedule a second sea trial."); *see also* ECF 34 at ¶ 7 ("[O]n May 9, [2019] I emailed Nextwave about scheduling a second water test."); ECF 27 at 35.

Plaintiff also introduces the testimony of Joseph Ashton as an expert in the maritime services sector. ECF 45 at 5. In relevant part, Mr. Ashton states that after a major systems refit, as occurred on the Vessel, "[f]inal water testing is a necessary step . . . a project is by definition not complete until final water testing occurs and the vessel is released by the service provider." ECF 28 at 10. Plaintiff's proffer of Joseph Ashton as an expert, particularly on matters of custom and usage in the maritime service sector, is not obviously defective. *See Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) ("Rule 702 should be applied with a 'liberal thrust' favoring admission"); *see* Fed. R. Evid. 702 advisory committee's note ("Nothing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony."). Nevertheless, this Court need not rule on the admissibility of Joseph Ashton's testimony, because it does not alter the Court's findings.

Surely, if the Stascauskys made it impossible for NextWave to complete performance under a contract, that nonperformance would likely be excused. *See* Corbin et al., *supra*, § 74.3. However, Defendants have raised a genuine issue of material fact concerning the scope of performance expected from NextWave for the Vessel repair project. Gerard Stascausky states that instead of having NextWave complete the water test, he and his father decided to conduct one themselves. ECF 27 at 13. Defendants also point to the absence of any water test obligation in the August 2018 Agreement, as well as communications from NextWave in early May stating that work on the Vessel was complete. For example, in an email from Barbara Mark to Gerard Stascausky on May 9, 2019, Ms. Mark writes, "[t]he work has been completed on the vessel and

PAGE 20 – OPINION AND ORDER

I will submit an invoice for the recent labour and parts." *See* ECF 34 at 5. The invoice dated May 9, 2019 also states "[v]essel is complete for agreed upon commitment and extra requests." *Id.* at 7. Moreover, the Court notes that the questions surrounding the existence and terms of the contract between the parties by May of 2019 also raise additional uncertainties related to the scope and expectations of project performance that cannot be resolved at this stage in the proceedings. Plaintiff's motion for partial summary judgment is denied.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is GRANTED IN PART, and Plaintiff's cross-motion for partial summary judgment is DENIED.

**IT IS SO ORDERED**.

DATED this 21st day of September, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge