# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NEXTWAVE MARINE SYSTEMS, INC.,** *a British Columbia corporation*, | Case No. 3:19-cv-01354-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **M/V NELIDA**, *her engines, tackle, apparel and equipment*, **CASAMIRO A. STASCAUSKY** and **GERARD STASCAUSKY**, | |
| Defendants. | |

Michael E. Haglund, Eric J. Brickenstein, HAGLUND KELLEY LLP, 200 S.W. Market Street, Suite 1777, Portland, Oregon 97201. Attorneys for Plaintiff.

Nicholas A. Kampars, WILDWOOD LAW GROUP LLC, 3519 NE 15th Avenue, #362, Portland, Oregon 97212. Attorney for Defendants.

**IMMERGUT, District Judge.**

      This matter came before the Court for a bench trial, held from November 3, 2020 through

November 5, 2020. Plaintiff NextWave Marine Systems, Inc. asserts a claim for breach of

contract and, in the alternative, a claim in quantum meruit, against Defendants Gerard

Stascausky, Casamiro Stascausky, and the M/V Nelida. Defendants assert a counterclaim against Plaintiff for breach of contract.

After reviewing the evidence and the parties' pretrial submissions, the Court makes the following findings of fact and conclusions of law, under Rule 52(a) of the Federal Rules of Civil Procedure. Any finding of fact that constitutes a conclusion of law is adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is adopted as a finding of fact.

## FINDINGS OF FACT

1.      Plaintiff NextWave Marine Systems, Inc. ("NextWave") is a company located in Qualicum Beach, British Columbia, Canada that designs, manufactures, and installs custom hydrostatic transmission systems for marine applications as well as other marine systems. Ted and Barbara Mark co-own NextWave. Ted Mark is a mechanical engineer and designer of NextWave's "Hidramech" system, a custom hydrostatic transmission system for marine applications. Barbara Mark, Ted's wife, heads the administrative and bookkeeping side of NextWave's business.

2.      Defendant M/V Nelida (the "Vessel") is a 65' Cape Horn Trawler. Defendant Gerard Stascausky is listed as the owner on the title of the Vessel. Gerard's father, Casamiro "Art" Stascausky contributed financially to purchase the Vessel, contributes to its upkeep, and frequently uses the Vessel.

3.      While using the Vessel, the Stascauskys noticed some mechanical issues, including a high-pitched noise and an oil leak, that they believed came from the transmission. They also observed that the engine appeared to smoke at idle. After conducting research about various boat repair businesses capable of resolving these issues, in the Spring of 2018 the Stascausky Defendants contacted NextWave about replacing the Vessel's existing transmission with a hydrostatic transmission.

PAGE 2 – OPINION AND ORDER

4.      In May of 2018, Ted and Barbara Mark travelled to Portland, Oregon, where the Vessel was moored, to inspect the Vessel and discuss the proposed project with the Stascauskys. The Stascauskys paid NextWave for the costs incurred in travelling to Portland.

5.      Ted and Barbara Mark spent several hours examining the Vessel, taking photographs, and meeting with the Stascauskys to discuss aspects of the project. The Marks did not dismantle any part of the Vessel during this visit and the Vessel's engine was never turned on. At the conclusion of their visit, Ted Mark stated that NextWave could complete the work requested by the Stascauskys.

6.      The parties then conducted an extensive negotiation over the scope and price of the project for roughly two months. This exchange occurred largely over email and is documented by the evidence submitted at trial, including email excerpts between the parties as well as Gerard Stascausky's trial testimony describing the negotiations, which this Court found to be credible.

7.      First, on May 25, 2018, Ted Mark sent the Stascauskys a proposed description of the scope of work to be done on the Vessel as well as an estimated cost for the work in the amount of $85,000 in Canadian dollars ("CAN").[1] In the proposal, Ted Mark warned, "[t]his is an estimate only! Due to the complexity of the task there are going to be unforeseen areas at this point in time, whether it might be parts or labor costs. However, this estimate will be as close as plus/minus 10-15%." Ex. 102.

8.      On June 4, 2018, Gerard replied to Ted Mark's proposal indicating that he would like NextWave to perform the requested work on the Vessel, but "the price is more than we can

---

[1] Neither party submitted evidence at trial about the currency exchange rate at the time of the negotiations, but this Court takes judicial notice that the approximate current U.S. dollar equivalent of $85,000 CAN is $65,000 USD.

afford at the moment." He then asked for a possible price reduction, stating "I wanted to know if there was any room in the price or anything we could do to lower the price without compromising quality or noise reduction. If not, we may need to put the project on hold . . . ." Ex. 103.

9.      On June 6, 2018, Ted Mark replied to Gerard Stascausky's email with several proposed cost saving measures. Ted Mark wrote, "if I can implement the auxiliary system savings we would be able to provide the Hidramech system installed and tested for 55,000 USD. If you can live with this amount I would need 2-3 month[s] of time to complete the project, at our local marina, due to ongoing commitments." Ex. 103.

10.     On June 14, 2018, Gerard Stascausky sent NextWave an email indicating that he would like to move forward with the project. Ted Mark wrote back on June 15, 2018, "[t]hank you Gerard, [w]e will put a short agreement and plan together this coming week and get it to you." Ex. 103.

11.     On June 19, 2018, Ted Mark sent a revised proposal to the Stascauskys with six categories of work identified for the Vessel. For the first three items of work listed, Ted Mark indicated the work would cost an estimated $55,000 USD. For the remaining work items listed, Mr. Mark stated he could not provide a cost estimate until he had "the opportunity to make the full assessment." The proposal included signature lines for each party to sign but it was never signed. Ex. 104.

12.     The parties continued to negotiate by phone, and on July 30, 2018, Gerard Stascausky sent NextWave a proposed contract in a separate attached document memorializing the "general understanding of the agreement and wish list of items to accomplish." He also noted the contract was based on one of Ted Mark's previous proposals with modified text. Finally, he

added, "[t]his is a starting point, so please feel free to propose any modification[s] you feel are important or call me on the cell phone and we can talk them over." Ex. 106.

13.    On August 1, 2018, Ted Mark suggested additional revisions to the proposed contract, including a clarification of the text concerning work to be performed on the Vessel's power steering pump, and a note on the contract price, writing, "[i]n our discussion and communications it was estimated to the best of my knowledge with the limited information I have at this time. However, the number in this heading will give us a guideline for a start with a 10% plus/minus figure." Ex. 108.

14.    On August 2, 2018, Gerard Stascausky incorporated Ted Mark's edits into the body of the contract and resent it for his review. Ex. 109.

15.    Following additional conversations between the parties, Gerard Stascausky sent another revised version of the contract to NextWave on August 8, 2018 for the Marks to sign. In the accompanying email, Gerard wrote, "[p]lease review and let me know if the changes you requested look good. If so, please feel free to sign the contract and send back. We'll then sign the same contract and return it to you for your files." Ex. 110.

16.    Barbara and Ted Mark signed the contract on August 9, 2018, and Art and Gerard Stascausky executed the contract on August 13, 2019. Ex. 111 is a true and correct copy of their agreement ("the August 2018 Contract"). This Court finds that the August 2018 Contract is a fully integrated contract that included all essential terms the parties had negotiated.

17.    The August 2018 Contract identified seven broad categories of work for NextWave to complete. The projects included installation of the Hidramech system, relocation of the Vessel's rear engine mounts, design and installation of a sound reduction box, reconfiguration of the auxiliary pump, work on the Vessel's electronic systems, work on the

Vessel's power steering pump, and work to prevent the engine from smoking at idle. The

Contract also included a section titled "Contract Price and Payment Terms." That section

provided that the total project cost would be $65,000 USD, "[t]o be paid ½ up front (USD

$32,000) and the balance paid monthly (USD $5,000 per month)." The August 2018 Contract

also included a variance clause, stating that the "actual price may vary by plus or minus 10%

(USD $6,500), and NextWave Marine Systems Inc. agrees to work in good faith in determining

any such adjustments." The Contract did not include any provision for additional payments based

on a time and materials basis for the seven categories of identified work. The Contract further

noted three categories of work "not included in [the] contract price," including: (1) "fees payable

to Kobelt for modifying the controller"; (2) "fees payable to engine mechanic for evaluating and

repairing engine smoke issue at idle"; and (3) "cost of adding the power steering pump and

related piping." Ex. 111.

18.     Soon after executing the Contract the Stascauskys wired NextWave $32,5000

USD as required by the August 2018 Contract. They then sailed the Vessel to French Creek

Marina in British Columbia in late August 2018, where NextWave would perform the repairs.

19.     In accordance with the terms of the August 2018 Contract, the Stascauskys made

monthly payments of $5,000 USD to NextWave from October 2018 through May of 2019.

20.     As the project progressed, some aspects were delayed because various part

deliveries were delayed, according to Plaintiff. The project extended beyond the 90–100 days

originally estimated. Some parts of the project were altered to include different work than

originally described in the August 2018 Contract. For example, Plaintiff did not move the

existing auxiliary pump inside a sound abatement box as contemplated by item four in Ex. 111,

but rather replaced the existing auxiliary pump with a new one. Despite these alterations, the

Marks never discussed changing the August 2018 Contract to a time and materials contract with the Stascauskys, nor did the Marks obtain express approval from the Stascauskys, either oral or written, to charge them for additional project costs or make material changes to the existing terms of August 2018 Contract. The Stascauskys continued to wire monthly payments of $5,000 USD to NextWave for the project as the August 2018 Contract required.

21.    In addition to the Contract work, Plaintiff performed "extra" work on the Vessel outside of the Contract's scope. This "extra" work included installing front engine mounts on the Vessel, and was performed with the express approval of the Defendants. Defendants paid for these "extra" projects through separate invoices outside of the fixed payment schedule for the August 2018 Contract work.

22.    In April 2019 the Stascauskys travelled to French Creek Marina to attend a water test of the Vessel with NextWave. During the water test, which occurred on or about April 10, 2019, the parties identified issues with the Vessel which Plaintiff agreed to take care of. *See* Ex. 131.

23.    On or about April 10, 2019, after the water test, Barbara Mark came to the Vessel and presented the Stascauskys with an invoice for the project in the amount of $52,246.93 USD. Ex 129; Ex. 130. The Stascauskys disputed the billing, and asked Barbara Mark questions about the bill that she was unable to answer. Barbara Mark agreed to make NextWave's accountant available to the Stascauskys to address any issues with the billing. The Stascauskys left the Vessel at French Creek Marina pending further outstanding work that was identified during the water test.

24.    On or about May 10, 2019, NextWave sent the Stascauskys a revised invoice charging for time and materials. Ex. 9. The invoice requested an additional $82,286.11 CAN

from Defendants. The invoice noted that Defendants had already paid NextWave $72,500 USD for work performed under the August 2018 Contract. The invoice also acknowledged the Stascauskys' previous payment for "extras," representing work performed and paid for outside of the August 2018 Contract. The additional $82,286.11 CAN requested represented time and material costs incurred by NextWave largely for work covered by the August 2018 Contract, with some limited exceptions. The Defendants offered to pay the amount requested, but they wanted to take the Vessel and pay the invoice in monthly installments, which NextWave refused to accept. Ex. 11; Ex. 144.

25. The parties continued to communicate regarding the disputed billing, and to plan for a second water test at French Creek Marina. *See* Ex. 11; Ex. 131; Ex. 133; Ex. 135; Ex. 136; Ex. 137; Ex. 138; Ex. 143; Ex. 145; Ex. 146. In one such communication, dated May 22, 2019, Ted Mark appears to say he always construed the parties' August 2018 Contract to provide for time and materials billing in addition to the $65,000 plus or minus 10% agreed upon in the August 2018 Contract. This Court did not find Ted Mark's testimony on this issue to be credible.

26. NextWave informed the Stascauskys that it would continue to support a second water test for the Vessel, but that the Stascauskys could not retrieve their boat until the invoice was paid in full. Ex. 144.

27. In late May 2019, the Stascauskys travelled to French Creek Marina and took the Vessel without NextWave's knowledge and before any second water test was performed.

28. After departing from French Creek Marina, the Stascauskys identified issues with the Vessel, but they continued to sail to Port Angeles, Washington. Those issues included an oil leak from the hydrostatic transmission installed by Nextwave, as well as problems with the Kobelt steering system.

29.    The Defendants hired Platypus Marine, Inc., located in Port Angeles, Washington, to fix issues identified in the Vessel.

30.    The Parties failed to reach a resolution regarding outstanding payments, and Plaintiff brought this lawsuit on August 26, 2019.

## CONCLUSIONS OF LAW

### A.  Overview of Plaintiff's Allegations and Requested Relief

Plaintiff alleges Defendants breached the terms of their contract. In the alternative, Plaintiff alleges it is entitled to recover for the benefit it conferred on the Defendants in quantum meruit. Plaintiff requests damages in the amount of the unpaid balance of the May 2019 invoice, $82,286.11, which is approximately $63,000 USD.

As discussed below, this Court finds that NextWave has not proven the Stascauskys breached the August 2018 Contract. Further, this Court finds that Plaintiff has demonstrated a claim in quantum meruit for some additional work performed on the Vessel, but failed to meet its burden of demonstrating the value of that conferred benefit, aside from the cost of some materials identified in the May 2019 invoice. *See* Ex. 9.

### B.  Legal Standards

Because the original complaint was properly in federal court on federal admiralty subject matter jurisdiction, general maritime law applies. *See* U.S. Const. art. III, § 2. "Admiralty jurisdiction brings with it a body of federal jurisprudence, largely uncodified, known as maritime law." *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 625 (1st Cir. 1994). Developed from state and federal sources, "general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986).

"[S]tate law may supplement federal maritime law when maritime law is silent or where a local matter is at issue, but state law may not be applied where it would conflict with maritime law." *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1047 (3d Cir. 1988); *see also Richard v. Anadarko Petroleum Corp.*, 850 F.3d 701, 709 (5th Cir. 2017) (noting state law may be utilized to fill gaps in an incomplete maritime system); *Aqua-Marine Constructors v. Banks*, 110 F.3d 663, 667–68 (9th Cir. 1997) (holding disputes over maritime insurance may be governed by state law, as long as the state law does not clearly conflict with general maritime law). This Court will therefore reference Oregon law to supplement the established rules provided by general maritime law.

To prevail on a claim for breach of a maritime contract, Plaintiff must prove by a preponderance of the evidence: (1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of damages caused by the breach. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005).

To prevail on a claim in quantum meruit, a Plaintiff must generally prove by a preponderance of the evidence: (1) it conferred a benefit; (2) the recipient is aware it has received a benefit; and (3) it would be unjust to allow retention of the benefit without requiring the recipient to pay for it. *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 131 (2017).

## C. Analysis

### 1. Breach of Contract

Plaintiff contends the contract was unintegrated, and represented only a "starting point" for the parties before the Marks had a chance to thoroughly inspect the Vessel. Alternatively, Plaintiff contends that the terms of the contract were modified following Ted and Barbara Mark's inspection of the Vessel once it arrived at French Creek Marina. Plaintiff argues that the scope of the project expanded beyond the description provided in Ex. 111 to include additional

work. Plaintiff argues Defendants breached their part of the bargain by not paying for services they contend were performed under the terms of the agreement between the parties. Therefore, in assessing Plaintiff's claims, this Court must determine whether or not the August 2018 Contract was integrated, what the terms of the contract were, and whether the terms were subsequently modified.

"An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement." *Battery S.S. Corp. v. Refineria Panama, S. A.*, 513 F.2d 735, 739 (2d Cir. 1975). Whether a maritime contract is integrated is a question of fact to be decided based on all available evidence. *Id.* at 739–40. Therefore, the Court looks to "all available evidence," including the parties' extensive antecedent negotiations, to determine the question of integration.

This Court finds the August 2018 Contract was a fully integrated, fixed-price contract. Most notably, this Court acknowledges the extensive colloquy between the parties negotiating the written terms of the contract, documented in large part by an email exchange from May to August, 2018 between the parties and supported by Gerard Stascauskys credible trial testimony. The parties, both sophisticated players, conducted an extensive, arms-length negotiation to determine the scope of the project as well as its price. The Court finds Gerard Stascausky's statement explaining he cannot afford the contract price of $85,000 CAN during negotiations, as well as Ted Mark's proposal of a variance clause to cover any unexpected or additional work needed on the Vessel particularly telling on the issue of integration. The Court does not find Ted Mark's post-hoc assertion that he understood the Contract to allow for time and materials billing to be credible given the extensive documented negotiations between the parties in the lead up to the Contract's execution.

Because this Court finds that the Contract was fully integrated and the terms of Contract are unambiguous, the maritime parol evidence rule applies. The Court will not consider antecedent or contemporaneous writings or negotiations to contradict the Contract's written terms. *See Battery S.S. Corp.*, 513 F.2d at 738; *see also Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332–33 (5th Cir. 1981) ("[A] court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous."). Therefore, the Court does not consider the parties' extensive written negotiations in construing the terms of the Contract, nor does the Court consider Ted Mark's assertions that he always understood the Contract to contemplate time and materials billing in construing the Contract's terms.

In interpreting the Contract, the Court finds that the parties entered into a fixed-price agreement to pay $65,000 USD for the labor and materials identified in the scope of work and also agreed to a 10% variance as a ceiling price on the total cost of the seven projects enumerated on the first page of the Contract.

This Court further finds that the Contract was not modified through the course of performance. Although alteration, modification, or waiver of maritime contract provisions may be implied from the circumstances surrounding performance of the contract, *Stauffer Chem. Co. v. Brunson*, 380 F.2d 174, 182 (5th Cir. 1967), this Court finds Plaintiff has not met its burden to show such modifications. There is no credible evidence in the form of email communications, detailed records of work performed on the Vessel, or an alternative method of billing before the disputed May 2019 invoice to indicate that the parties had explicitly discussed and agreed to modify the payment terms and project scope outlined in the August 2018 Contract. In addition, both Ted and Barbara Mark testified that they had not either orally or in writing agreed with

Defendants to modify the August 2018 Contract. Therefore, the Court finds that the terms of the Contract and its fixed-price provision remained unmodified throughout the duration of the Vessel repair project.

As demonstrated by NextWave's own May 2019 invoice, Defendants paid the August 2018 Contract price, plus the 10% overage variance and $1000 USD in additional fees to NextWave for work performed under the Contract. Defendants, therefore, did not breach the August 2018 Contract. The Court finds for Defendants on Plaintiff's breach of contract claim.

## 2. Quantum Meruit

Plaintiff seeks recovery for the work performed on the Vessel in excess of or outside the scope of the August 2018 Contract as an alternative remedy. Plaintiff identifies several categories of work it alleges it performed outside the scope of the Contract, including work on a new auxiliary pump, work on a new power steering pump, the installation of a new oil filtration system, labor related to the caretaking of the Vessel while it was moored, and the water test performed in April 2019. While testifying, Gerard Stascausky conceded he has not paid NextWave for a new power steering system pump and hoses NextWave installed on the Vessel. The invoice values those materials at $1,133.66 CAN. *See* Ex. 9. The Court finds this installation was not covered by the fixed-price of the August 2018 Contract, as the Contract clearly states the "cost of adding the power steering pump and related piping" is not included in the contract price. Ex. 111.

Crucially, however, Plaintiff cannot direct the Court to any other evidence demonstrating the value of the benefit conferred on the Stascauskys outside the scope of the August 2018 Contract that remains uncompensated. Plaintiff merely points to the unpaid balance of the May 2019 invoice as a "reasonable" estimation of damages. Plaintiff concedes, however, that the balance of the bill does not include all of the "extra" work it seeks to recover for in quantum

meruit, including Barbara Mark's labor for caretaking the Vessel while it was moored in French

Creek Marina, or the costs associated with the water test performed by NextWave in April 2019.

Accordingly, the Court finds Plaintiff is entitled only to an award of $1,133.66 CAN in

quantum meruit for the value of the hoses and new power steering pump installed on the Vessel.

Further, Plaintiff is entitled to prejudgment interest for this claim. *See Ryan Walsh Stevedoring

Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 492 (5th Cir. 1986) ("[A]n award for

prejudgment interest in actions under the general maritime law is the rule rather than the

exception; prejudgment interest must be awarded unless unusual circumstances make an award

inequitable.").

**D.  Overview of Defendants' Allegations and Requested Relief**

Defendants allege Plaintiff breached the terms of the August 2018 Contract for deficient

work on the Vessel. Defendants allege the Vessel experienced mechanical problems as soon as

the Stascauskys took it from French Creek Marina in May 2019. They seek damages for "up to

$100,000" USD, representing the amount paid to Platypus Marine, Inc. to fix the alleged

mechanical defects in the Vessel, as well as other incidental costs incurred for this additional

work. *See, e.g.*, Ex. 151; 152; Ex. 155.

As discussed below, the Court finds that Defendants have not satisfied their burden of

proving that NextWave breached the August 2018 Contract and accordingly finds for Plaintiff on

this claim.

**E.  Legal Standards**

To prevail on a claim for breach of contract, Plaintiff must prove by a preponderance of

the evidence: (1) the terms of a maritime contract; (2) that the contract was breached; and (3) the

reasonable value of damages caused by the breach. *Sweet Pea Marine*, 411 F.3d at 1249.

## F. Analysis

In support of their contention that Plaintiff's contract performance was inadequate, Defendants provide only the lay testimony of the Stascauskys and Chris Feffer, a Vessel mechanic who performed work on the Vessel on behalf of Platypus Marine, Inc. in Port Angeles, Washington. Specifically, at trial Gerard Stascausky explained that when he arrived at French Creek Marina in late May of 2019, he observed that the Kobelt steering system was not working properly. Further, he explained as he and Art Stascausky navigated the Vessel out of French Creek Marina, he also noticed an oil leak from the hydrostatic transmission. Chris Feffer testified about work he performed on the control components and mechanical components of the Vessel after it arrived in Port Angeles. He described work performed on the Kobelt steering system and work to fix oil leaks from the hydrostatic transmission.

Defendants contend that Chris Feffer discovered deficiencies in NextWave's work and was forced to correct them through additional repairs. However, Defendants failed to provide any expert testimony to credibly and reliably assess the work performed by NextWave and identify to the Court any specific deficiencies discovered and what caused them. Further, Defendants provide no expert testimony linking the alleged defects to NextWave's work on the Vessel. Instead, Defendants rely mainly on fact witness Chris Feffer to recount his work on the Vessel and from there ask this Court to infer that such work was caused by NextWave's inadequate performance. This Court will not make that inferential leap when Defendants bear the burden of proof. Moreover, Defendants have failed to rebut or overcome testimony by Plaintiff's expert Joseph Ashton about damage potentially caused by sailing the Vessel from French Creek Marina to Port Angeles, which Defendants did without NextWave's knowledge. This Court concludes Defendants have failed to prove by a preponderance of evidence that NextWave was

to blame for the mechanical defects later identified in the Vessel, and finds for Plaintiff on this claim.

## CONCLUSION

On Plaintiff's claims for breach of contract and quantum meruit, and Defendants' counterclaim for breach of contract, the Court makes the findings of fact and conclusions of law stated in this Opinion and Order.

The parties are instructed to submit supplemental information to this Court to determine the appropriate currency conversation rate for the calculation of damages for Plaintiff's quantum meruit claim, as well as the appropriate statutory prejudgment interest rate to apply to those damages. This supplemental information must be submitted no later than November 20, 2020. The Court will then enter a Judgment.

**IT IS SO ORDERED**.

DATED this 12th day of November, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 16 – OPINION AND ORDER